# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT
### Washington, DC

|  |  |
|---|---|
| **LYNETT S. WILSON,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) |
| v. | ) **PETITION FOR REVIEW** |
| | ) |
| | ) |
| **UNITED STATES MERIT SYSTEMS** | ) |
| **PROTECTION BOARD,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

Petitioner, **Lynett S. Wilson**, hereby submits this Petition for Review/Notice of Appeal for Order or Decision of an AGENCY ORDER by and thought her undersigned attorney as required containing the information required by this Court's Form 5.

Petitioner, Lynett S. Wilson, hereby petitions/appeals the Court for the review of the **Final Order of the Merit Systems Protection (MSPB),** Docket Number: **PH-0752-0329-I-1** entered on June 26, 2019.

The Attached Proposed MSPB Order was received via its e-appeal system on May 16, 2019. The MSPB Order became final on June 20, 2019 and as stated in its Notice of Appeal Rights to Petitioner this Petition/Appeal is submitted within 60 days after the MSPB Notice became its final order pursuant to 5 U.S.C. § 7703 (2019).

Date: <u>August 19, 2015</u>

Robert F. Stone, Esq.
Petitioner's Attorney
Law Office
P.O. Box 183
South Deerfield, MA 01373
Phone: (413) 369-4421
FAX: (413) 208-0215

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## NORTHEASTERN REGIONAL OFFICE

LYNETT S. WILSON,
               Appellant,

    v.

DEPARTMENT OF VETERANS
    AFFAIRS,
               Agency.

DOCKET NUMBER
PH-0752-17-0329-I-2

DATE: May 16, 2019

> Robert Fred Stone, Esquire, South Deerfield, MA, Massachusetts, for the
> appellant.
>
> Joshua R. Carver, Augusta, Maine, for the agency.

## BEFORE
Craig A. Berg
Administrative Judge

## INITIAL DECISION

introduction

      On June 28, 2017, the appellant filed a petition for appeal alleging that the agency had constructively suspended her from her position of Radiologic Technologist, GS-10, Togus VA Medical Center, Augusta, Maine, when it failed to accommodate her disability, forcing her to into unpaid status from September 28, 2016 to June 12, 2017. Initial Appeal File (IAF), Tab 1. I found that the appellant made a nonfrivolous allegation that she had been constructively suspended for more than 14 days, and a hearing was therefore held on November 27, 2018. *Id.*, Tab 11; Hearing Transcript (HT).

      For the reasons discussed below, this appeal is DISMISSED for lack of Board jurisdiction.

Analysis and findings

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

Lynett Wilson, Petitioner,

v.   **PETITION FOR REVIEW**

Final Order of Merit Systems Protection Board.


Petitioner Lynett Wilson hereby petitions the Court for review of the of the Merit Systems Board Decision (MSPB) decision denying her appeal against the, Robert Wilkie, Secretary, U.S. Department of Veterans Affairs, Initial Decision of May 15, 2019 that became final on June 20, 2019. This Petition is filed as the MSPB did not address all relevant issues, allowed the VA to deny Petitioner due process, violated its own regulations, and did not properly apply the governing rules, regulations, and law. The Initial Decision was received on May 15, 2019 and became final on June 20, 2019.

This Petition for Review is submitted to the Court this date of August 20, 2019 prior to the filing deadline of August 20, 2019 in the attached MSPB Final Decision Notice of Appeal Right pursuant to 5 U.S.C. § 7703(b)(1)(B) (2019).


Date:  August 15, 2019

Robert F. Stone, Esq.
Petitioner's Attorney
Law Office
P.O. Box 183
South Deerfield, MA 01373
Phone: (413) 369-4421
FAX: (413) 369-4244

Burden of Proof and Applicable Law

The agency did not officially suspend the appellant from duty, in writing, in accordance with applicable law, and argues that it did not take an action that is appealable to the Board. The appellant contends that she was constructively suspended, because the agency's failure to accommodate her known disability caused her to be in unpaid status for an extended period.

The Board lacks jurisdiction over appeals of employees' voluntary actions. *O'Clery v. U.S. Postal Service*, 67 M.S.P.R. 300, 302 (1995), *aff'd*, 95 F.3d 1166 (Fed. Cir. 1996) (Table); 5 C.F.R. § 752.401(b)(9). However, employee-initiated actions that appear voluntary on their face are not always so. *Spiegel v. Department of the Army*, 2 M.S.P.R. 140, 141 (1980). The Board may have jurisdiction over such actions under 5 U.S.C. chapter 75 as "constructive" adverse actions, and involuntary leaves of absence may be appealable to the Board under chapter 75 as constructive suspensions if they exceed 14 days. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶¶ 7-8 (2013).

Although various fact patterns may give rise to an appealable constructive suspension, all constructive suspensions have two things in common: (1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived him of that choice. Assuming that the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, proof of these two things by preponderant evidence is sufficient to establish Board jurisdiction.[1] *Bean*, 120 M.S.P.R. 397, ¶ 8; 5 C.F.R. § 1201.56(a)(2)(i).

An agency must provide reasonable accommodation to the known limitations of a qualified individual with a disability unless to do so would create

---

[1] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2). The agency does not dispute that the appellant is an "employee" with adverse action appeal rights under 5 U.S.C. § 7511(a)(1)(A).

an undue hardship. 42 U.S.C. §§ 12112(a), (b)(5)(A); *Paris v. Department of the Treasury,* 104 M.S.P.R. 331, ¶ 11 (2006); 29 C.F.R. § 1630.9.

Pursuant to the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et. seq* (2008) (ADAAA), the appellant may prove that he has a disability by showing that he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1), 29 C.F.R. § 1630.2(g)(1),(2),(3). The definition of disability is construed in favor of broad coverage. 42 U.S.C. § 12102(4)(A).

A physical or mental impairment is any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, or any mental or psychological disorder. 29 C.F.R. § 1630.2(h). The test for whether a disability substantially limits the ability of an individual to perform a major life activity is applied as compared to most people in the general population. 29 C.F.R. § 1630.2(j). Major life activities include but are not limited to activities such as caring for oneself, performing manual tasks, eating, lifting, bending, concentrating, communicating, and working, including the operation of a major bodily function. 42 U.S.C. § 12102(2).

An impairment that substantially limits one major life activity need not limit others. One that is episodic or in remission is a disability if it would substantially limit a major life activity when active. The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures other than ordinary eyeglasses or contact lenses. 42 U.S.C. § 12102(4).

In the second method of proving a disability, an individual "has a record of" a disability if he has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. This may include individuals who were treated for a disease but no longer have it as well as individuals who were misdiagnosed with a substantially

limiting impairment even though they did not actually have that impairment. S. Rep. No. 116, 101st Cong., 2d Sess. 23. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. *Id*. Whether an individual has such a record is to be broadly construed. If the individual has such a record, the agency need not have relied on that record for the individual to be covered under this test.

With regard to the third method of proving disability, an individual meets the requirement of being "regarded as having such an impairment" if he establishes that he has been subjected to a prohibited action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. However, the "regarded as" test shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of six months or less. 42 U.S.C. § 12102(3).

A qualified individual with a disability is a person with the skills, training and experience to perform the essential functions of a position, with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Paris,* 104 M.S.P.R. 331, ¶ 11; 29 C.F.R. § 1630.2(m). Reasonable accommodation may entail modifications to the individual's current position or reassignment to a vacant position. 42 U.S.C. § 12111(9); *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1301–05 (D.C.Cir.1998) (en banc); 29 C.F.R. § 1630.2(*o*).

Evidence

The appellant performed the duties of her position in Building 200, Room 146 on the Togus campus. She testified that she was born with asthma but the symptoms of the condition had abated for over 30 years until July 12, 2016. HT at 10. On that day, she began wheezing and was unable to breathe, got hives on her skin, and her mouth was tingling, so she left work and went to the emergency

room. She was given breathing treatment and referred to an allergy specialist. *Id.* at 10-11.

On September 12, 2016, the specialist returned the appellant to duty, and she was again assigned to work in Building 200, Room 146, the office where her regular assigned duties were located. HT at 17, 27. She described the room as an old file room without ventilation, with nearby construction, auto exhaust, and a chemical spill at various times. *Id.* at 27-28. She again suffered the breathing-related symptoms, and was out of work until her physician indicated on a September 19, 2016 Duty Status Report, filled out in support of her Office of Workers' Compensation Programs (OWCP) claim for asthma, that she could return to duty on September 26, 2016, but not in Building 200. *Id.* at 17-18; IAF, Tab 22 (Agency File or AF) at 65.

The appellant returned to duty on September 26, 2016, and was assigned to work in Building 206. HT at 18-19. On September 28, John Gardner, then an Employee Labor Relations (ELR) Specialist in Human Resources (HR), called her to his office and presented her with a letter stating that her OWCP claim had been denied. *Id.* at 19-20. According to the appellant, the letter gave her several options, including returning to Building 200 and taking leave. *Id.* at 20. The record contains a September 27, 2016 letter from Human Resources Officer Jonathan Meserve, which appears to be the letter to which the appellant was referring. AF at 36; HT at 53. The appellant testified that she received this letter on September 28, 2016, and it informed her that, because her OWCP claim was denied, she was to contact her supervisor to coordinate her return to duties in the Radiology Service. It offered her the option to return to full duty status, use sick leave, or request reasonable accommodation. *Id.*

The appellant testified that she returned home after meeting with Gardner, and she then telephoned him to discuss the situation. HT at 20. Gardner responded by emailing her documents to request leave under the Family and Medical Leave Act of 1993 (FMLA) and/or reasonable accommodation. AF at 34.

His email provided some additional information regarding reasonable accommodation, including the fact that execution of the attached VA Form 0857A, Written Confirmation of Request for Accommodation ("RA form") was voluntary, but provides him assistance with the accommodation process. *Id.* at 33-35. The appellant filled out the RA form and returned it to Gardner on September 30, 2016, asking that he pass it on to Dusty Cochran, another ELR Specialist who was the local reasonable accommodation coordinator. HT at 20, 139; AF at 32-33.

The appellant testified that she had no income for the next nine months, as the agency would continual deny her request for an accommodation. HT at 21-22. She spoke with Gardner, Cochran, and Meserve, including in-person visits to HR, and they never told her verbally that they had not received the paperwork, only in letters. HT at 22. She could not return to Building 200 because of her asthma, which was potentially life threatening. *Id.* at 38-39.

The appellant testified that her physician submitted CA-17 forms to the agency during that period, though other than the September 19, 2016 form, the appellant did not file any of those Duty Status forms as exhibits in this appeal. HT at 44-45. She further testified that her provider responded to a list of questions from Rick Butler, of HR, and sent the answers to Butler. *Id.* at 45. Again, the record is bereft of the questions or responses. The appellant stated that she believed all communications with HR regarding her health condition pertained to her accommodation request, as well as the OWCP claim. *Id.* at 46-47.

Returning to the chronology of the period the appellant was off duty, she agreed that, on October 21, 2016, Meserve sent her a letter telling her she was being marked AWOL, and he asked for medical documentation in support of her accommodation request, to be received within 15 days. HT at 49-50; AF at 25. On November 2, 2016, she confirmed to Gardner that she had received the letter that day, and on November 8 she emailed Gardner and asked what documentation

the agency required regarding the reasonable accommodation request. HT at 55-56; AF at 24-25. In the email, the appellant stated that she believed her specialist had submitted the documentation that she could not return to building 200 in September, and the documentation was used to place her in building 206 on September 26. HT at 56; AF at 24-25. The following day, November 9, Gardner responded, explaining that she had not submitted a reasonable accommodation request based on air quality, but rather an OWCP claim that had been denied. He contended that she was placed in building 206 in order to find her meaningful work while the OWCP claim was being processed. HT at 57-58; AF at 64.

Later on the same date, November 9, the appellant emailed Gardner and stated that, according to her doctor's office, medical documentation had been faxed to HR on October 20, 2016. HT at 59-60; AF at 64. On November 10, 2016, Cochran emailed the appellant and asked her to have her doctor fill out a Request for Medical Documentation form that he attached, and he requested she return it as soon as possible. HT at 63; AF at 24, 27. The appellant admitted that she was unsure if her provider ever returned that form. HT at 65.

Meserve, the HR Officer at the time, testified that the Workers Compensation group reported to the network office, and were not part of Togus VA. HT at 80-81. Rick Butler did not have an office in HR at Togus. Meserve stated that he was aware in the fall 2016 that the appellant's OWCP claim had been denied, and he explained that she was never approved for a reasonable accommodation for asthma/air quality while the OWCP claim was pending; rather, the agency found meaningful work for her while the claim was pending, as required under Workers Compensation law. *Id.* at 82-83. After the claim was denied, Meserve sent the appellant the September 27, 2016 "options letter," which offered her, among other things, a chance to request an accommodation. *Id.*; AF at 36. In response, the appellant filled out the form requesting an accommodation. *Id.* at 84; AF at 33.

Meserve testified that, in a case like this, where the disability was not obvious, the information on this form was insufficient to grant the accommodation, as medical documentation was required. HT at 84. On the form, the appellant indicated she was going to send medical information, but he sent the appellant the October 21 letter when no documentation had been received. *Id.* at 84-85; AF at 31. The letter informed the appellant that she was being marked AWOL because, to his memory, she had no FMLA entitlement remaining and no leave. *Id.* at 85.

Meserve never saw the September 19, 2016 Duty Status Report in the record until these proceedings. HT at 86; AF at 65. He explained that it is a DoL form, and is protected from release to the agency by the Privacy Act. HT at 86. He testified that when the agency receives an accommodation request, in any medical documentation submitted they are looking for symptoms of the condition to determine whether the employee is a qualified individual with a disability, frequency/duration of the condition, major life function that is limited, and finally, how the accommodation would help the person perform his/her job. HT at 87-88 (Meserve), 145 (Cochran). The Duty Status form states that the appellant needed to be removed from Building 200, but not much more. *Id.* at 87-88. So, even with this form, the agency would have sent the same letter seeking more information. *Id.* at 88.

Gardner, the former ELR Specialist, and Cochran, the current ELR Specialist, also testified that they never saw the Duty Status form at the time. HT at 126, 146. All three of the agency witnesses testified that they never received any medical documentation from the appellant in response to their requests. *Id.* at 88-89 (Meserve); 126 (Gardner); 142, 150 (Cochran).

Findings

After careful consideration of the record evidence, for the reasons explained below, I find that the appellant has failed to show, by preponderant

evidence, that the agency constructively suspended her during the period at issue. Although she has shown that she had no meaningful choice except to take leave and stay out of the workplace when informed, on September 28, 2016, that her relocation to Building 206 would not continue because her OWCP claim had been denied, she has not shown that the agency's wrongful actions deprived her of that choice.

As noted above, the appellant is alleging that she was constructively suspended when the agency failed to accommodate her known disability-asthma-when it removed her from a previously-granted alternate work location and required her to either return to a her previous "toxic" office or be charged with absence without leave (AWOL), on or about September 28, 2016. IAF, Tab 9; IAF-2, Tab 11. She asserts that the suspension lasted until she began employment at the Phoenix VA Medical Center, on June 12, 2017.

It is well settled, and the agency does not appear to dispute, that a request for accommodation of a disability may be made verbally. *See, e.g., White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, 414 n.6 (2013) (citing Equal Employment Opportunity Commission (EEOC) Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (2002) (hereafter referred to as "EEOC Enforcement Guidance") (General Principles section and Q & A item 3)). Here, based on the testimonies of the appellant and Gardner, and the September 28, 2016 email Gardner sent the appellant, I find that the appellant requested an accommodation of her asthma condition on September 28, 2016. Moreover, based on the appellant's testimony regarding the severity of her condition and the Duty Status Report she submitted, I find that she has shown that she had a substantial impairment in a major life activity in 2016, and she therefore established that she suffered from a disability.

It is undisputed that Gardner sent the appellant the Written Confirmation of Request for Accommodation form on September 28, 2016, and she returned it to

him after filling it out on September 30, 2016 to pass on to Cochran. On the form, the appellant requested the following accommodations:

> Provide High efficiency air filters (HEPA)
>
> Provide air purification
>
> Provide different work environment with HVAC ventilation system
>
> Different workspace with windows
>
> Alternative work arrangement (telework)
>
> Alternative work arrangement while construction is taking place
>
> Alternative means of communication telephone, email, IM, Fax or memos.
>
> Flexible leave policy.

AF at 33. The appellant explained the reason for her request, and stated that medical documentation was to follow. *Id.*

Once the appellant had made her request for accommodation of her condition, the agency was required to engage in an interactive process to determine an appropriate accommodation. *Paris,* 104 M.S.P.R. 331, ¶ 17; 29 C.F.R. § 1630.2(*o*)(3); EEOC Enforcement Guidance at 6. The appellant, however, was also required to cooperate in the interactive process. "Both parties ... have an obligation to assist in the search for an appropriate accommodation, and both have an obligation to act in good faith in doing so." *Collins,* 100 M.S.P.R. 332, ¶ 11 (citing *Taylor v. Phoenixville School District,* 184 F.3d 296, 312 (3rd Cir.1999)).

I find that the agency was within its rights to request additional information from the appellant before making a decision on her accommodation request, especially considering the number of accommodation options she suggested. To the extent the appellant is arguing that the agency was required to accommodate her by allowing her to work in Building 206, the Board has stated that an employee is not entitled to the accommodation of her choice. *See, e.g., Miller v. Department of Army*, 121 M.S.P.R. 189, ¶ 21 (2014). A request for a specific accommodation does not necessarily mean that the employer is required to accede

to the request. The request is the first step in an informal, interactive process between the individual and the employer. *Id.* ¶ 15. If more than one accommodation will enable an individual to perform the essential functions of her position, the preference of the individual with the disability should be given primary consideration, but the employer providing the accommodation has the ultimate discretion to choose between effective accommodations. Appendix to 29 C.F.R. Part 1630, § 1630.9. Thus, here, the agency was within its discretion to seek more information in order to determine which of the accommodations the appellant requested might be most effective.

Even assuming the HR/ELR employees who considered the appellant's accommodation request should have known about and considered the September 19, 2016 Duty Status Report as medical evidence in making a decision, I agree with the agency that the Report provided insufficient information.[2] In this regard, other than identifying the appellant's condition and certain restrictions, the Report stated only that the appellant "needs to be removed from building 200." I find that, even with this document, it would have been reasonable for the agency to request further medical documentation, if nothing else in order to determine whether some of the other accommodations the appellant requested might have

---

2 The appellant cites case law for the proposition that the Duty Status Report can "constitute compelling prima facie evidence that the employee in question has a disability as defined by the Rehabilitation Act." IAF-2 at 11 (citing *Velva B. v Brennan*, 2017 WL 4466898, at *13). I agree with her argument on this point, but, the above holding does not state that an agency may not request additional medical documentation once a Duty Status Report has been received. As explained herein, the Duty Status Report at issue in the instant case contained insufficient information to allow the agency to assess the appellant's accommodation request. Therefore even if the HR/ELR employees involved in considering the request had seen and taken the Report into consideration, I would find that the agency was entitled to continue the interactive process to determine a proper accommodation.

allowed her to work in Building 200, where she would normally have performed the essential functions of her position.[3]

Despite a number of communications from the agency to the appellant reiterating the need for medical documentation in support of the accommodation request, the appellant admitted, HT at 60-62, 65-66, 68, and I find, that the record contains no evidence that additional documentation was provided. All of the agency witnesses testified that they received no documentation from the appellant in response to their messages/letters, and while the appellant asserted variously that she or her provider submitted further medical documentation, she failed to file copies of such documentation in this appeal, nor did she submit any evidence from her medical provider(s) that the documentation had ever been sent. Further weighing against a finding that appellant's doctor sent more documentation after appellant submitted the Written Confirmation of Request for Accommodation on September 30, 2016 is her November 8, 2016 email asserting that the specialist had sent the information requested stating that she was unable to return to Building 200 "back in September." AF at 24. The email continues, declaring that the information to which the appellant is referring was used to place her in Building 206 on September 26. I find that it is highly likely the appellant was referring to the September 19 Duty Status Report in this email, rather than other

---

3 If, as the appellant argues, the September 19 Duty Status Report is considered to be a request for a reasonable accommodation, instead of just an update that pertained to the appellant's OWCP claim or medical evidence that should have been used to assess her later accommodation request, I would still find it reasonable for the agency to have requested additional information to process the request. The physician who filled out the Report did not release the appellant to return to duty at a work location other than Building 200 until September 26, 2016, and the agency began to engage in the interactive process within days of that date. Accordingly, I would still find that the agency was within its rights to ask for information that would allow it to determine the most effective way to accommodate the appellant that would allow her to perform the essential functions of her position; thus, my holding that wrongful actions by the agency did not cause the appellant's absence from duty would remain unchanged.

medical documentation she claims was later submitted that might have been responsive to the agency's requirements.

For the reasons stated above, I find that the agency engaged in the required interactive process in good faith in order to assess the appellant's medical condition and determine an appropriate accommodation, but the appellant has not shown she was sufficiently responsive to the agency's requests for medical information.[4] *See Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 18 (2010). As such, I find that the appellant has not shown that it was the agency's wrongful actions that prevented her from continuing to work. *Id.*; *see also Taylor*, 184 F.3d at 317 ("an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs"); *Beck v. University of Wisconsin, Board of Regents,* 75 F.3d 1130, 1137 (7th Cir.1996) ("where, as here, the employer makes multiple attempts to acquire the needed information, it is the employee who appears not to have made reasonable efforts"); *Conaway v. U.S. Postal Service,* 93 M.S.P.R. 6, ¶ 37 (2002) (the agency was not liable for failure to provide a reasonable accommodation where it participated in good faith in the interactive process and the appellant did not respond to the agency's repeated requests for clear and objective medical evidence), *review dismissed,* 55 Fed.Appx. 565 (Fed. Cir. 2003).

---

4 I did not find credible the appellant's testimony that she went in-person and spoke with the HR/ELR employees about her accommodation request and they never mentioned that the medical evidence she had provided was insufficient. There is no reference in any of the written communications to any in-person meetings, and the appellant has provided no other corroboration for her testimony on this point. Moreover, I found the agency witnesses to be credible, as their testimony was consistent, both internally with each other's testimony, and with the documentary evidence, and none of them testified that the appellant met with them in-person after she was out of the workplace in late September 2016. In fact, appellant's counsel made no attempt to elicit testimony on this issue.

In conclusion, the appellant has not proven that she was constructively suspended during the period at issue, and as a result, her appeal must be dismissed for lack of Board jurisdiction.[5]

Decision

The appeal is DISMISSED for lack of Board jurisdiction.

FOR THE BOARD: _____

Craig A. Berg
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **June 20, 2019**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

BOARD REVIEW

5 In light of this disposition, I need not make a finding as to the timeliness of the appeal. And, the Board lacks authority to adjudicate the appellant's disability discrimination defense. *Wren v. Department of the Army*, 2 M.S.P.R. 1, 2 (1980), *aff'd*, 681 F.2d 867, 87173 (D.C. Cir. 1982).

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's eAppeal website (https://eappeal.mspb.gov).

NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

## Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than

12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R.

§ 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

notice OF APPEAL rights

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

within **60 calendar days** of <u>the date this decision becomes final</u>. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a courtappointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review

with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx